## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

# FILED

FILED

OCT 21 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

2:09 mc 95 MCE EFB

|  |  |
|---|---|
| U. S. SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| WILLIAM A. HUBER and HUBADEX, INC., | ) ) ) |
| Defendants, | ) ) ) |
| and | ) ) Case No. 09-cv-6068 ) |
| THE QUARTER FUNDS, L.P., THE SYMMETRY FUND, L.P., THE TRIMESTER FUND, AND RUTHANN HUBER, | ) Judge Ruben Castillo ) ) Magistrate Judge Soat Brown ) ) ) |
| Relief Defendants. | ) ) |

## ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon Plaintiff U.S. Securities
and Exchange Commission's ("Commission") Unopposed Motion for Appointment of a
Receiver; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the
appointment of a receiver in this action is necessary and appropriate for the purposes of
marshaling and preserving all assets of Defendants William A. Huber ("Defendant
Huber") and Hubadex, Inc. ("Defendant Hubadex") ("Receivership Assets") and those
assets of Relief Defendants The Quarter Funds, L.P., The Symmetry Fund, L.P., The
Trimester Fund, and Ruthann Huber that: (a) are attributable to funds derived from
investors or clients of Defendant Huber and/or Defendant Hubadex; (b) are held in

constructive trust for Defendant Huber and/or Defendant Hubadex; (c) were fraudulently transferred by Defendant Huber and/or Defendant Hubadex; and/or (d) may otherwise be includable as assets of the estates of Defendant Huber and/or Defendant Hubadex (collectively, the "Recoverable Assets"); and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over Defendant Huber and Defendant Hubadex, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of Defendants William A. Huber and Hubadex, Inc. and of the Recoverable Assets, of whatever kind and wherever situated, of Relief Defendants The Quarter Funds, L.P., The Symmetry Fund, L.P., The Trimester Fund and Ruthann Huber (collectively, "Receivership Defendants").

2.      Until further Order of this Court, Kevin B. Duff of Rachlis, Durham, Duff & Adler, LLC is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. Asset Freeze

3.      Except as otherwise specified herein, all Receivership Assets and Recoverable Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging,

2

assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze

shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that

are on deposit with financial institutions such as banks, brokerage firms and mutual

funds.

## II. General Powers and Duties of Receiver

4.      The Receiver shall have all powers, authorities, rights and privileges

heretofore possessed by the officers, directors, managers and general and limited partners

of the entity Receivership Defendants under applicable state and federal law, by the

governing charters, by-laws, articles and/or agreements in addition to all powers and

authority of a receiver at equity, and all powers conferred upon a receiver by the

provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ.P. 66.

5.      The trustees, directors, officers, managers, employees, investment

advisors, accountants, attorneys and other agents of the Receivership Defendants are

hereby dismissed and the powers of any general partners, directors and/or managers are

hereby suspended. Such persons and entities shall have no authority with respect to the

Receivership Defendants' operations or assets, except to the extent as may hereafter be

expressly granted by the Receiver. The Receiver shall assume and control the operation

of the Receivership Defendants and shall pursue and preserve all of their claims.

6.      No person holding or claiming any position of any sort with any of the

Receivership Defendants shall possess any authority to act by or on behalf of any of the

Receivership Defendants.

7.      Subject to the specific provisions in Sections III through XIV, below, the

Receiver shall have the following general powers and duties:

Case 2:09-mc-00095-MCE-EFB  Document 1  Filed 10/21/09  Page 4 of 40

A. To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B. To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendants;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H. The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I. To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

4

> J.  To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and,
>
> K.  To take such other action as may be approved by this Court.

### III. Access to Information

8.  The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

9.  Within ten (10) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants.

10.  Within thirty (30) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement and accounting, with complete documentation, covering the period from **January 1, 2006** to the present:

> A.  Of all Receivership Property, wherever located, held by or in the

5

name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.    Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.    Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.    Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.    Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.    Of all transfers of assets made by any of them.

11.    Within thirty (30) days of the entry of this Order, the Receivership

Defendants shall provide to the Receiver and the Commission copies of the Receivership

6

Defendants' federal income tax returns for 2006-2009 with all relevant and necessary underlying documentation.

12.     The individual Receivership Defendants and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

13.     To issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed.R.Civ.P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

14.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver. In addition, the Receivership Defendants are obligated to disclose to the Receiver any claims or potential claims against any of the Receivership Defendants of which they are aware.

7

## IV. Access to Books, Records and Accounts

15. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants. All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

16. The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

17. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

> A. Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;
>
> B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;
>
> C. Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account

8

or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.     Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V.   Access to Real and Personal Property

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

19     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The

9

Receiver shall have exclusive control of the keys. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## VI.  Notice to Third Parties

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is

10

authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

26. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

11

27.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

## VII. Injunction Against Interference with Receiver

29.     The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

        A.     Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

        B.     Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

        C.     Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due

12

date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property; or,

D.    Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.    The Receivership Defendants shall cooperate with and assist the Receiver

in the performance of his duties.

31.    The Receiver shall promptly notify the Court and Commission counsel of

any failure or apparent failure of any person or entity to comply in any way with the

terms of this Order.

## VIII. Stay of Litigation

32.    As set forth in detail below, the following proceedings, excluding the

instant proceeding and all police or regulatory actions and actions of the Commission

related to the above-captioned enforcement action, are stayed until further Order of this

Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.    The parties to any and all Ancillary Proceedings are enjoined from

commencing or continuing any such legal proceeding, or from taking any action, in

connection with any such proceeding, including, but not limited to, the issuance or

13

employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX.  Managing Assets

35.     For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of [Name of Receivership Defendant]" together with the name of the action.

37.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the

14

realization of the true and proper value of such real property.

39.    Upon further Order of this Court, pursuant to such procedures as may be
required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the
Receiver will be authorized to sell, and transfer clear title to, all real property in the
Receivership Estates.

40.    The Receiver is authorized to take all actions to manage, maintain, and/or
wind-down business operations of the Receivership Estates, including making legally
required payments to creditors, employees, and agents of the Receivership Estates and
communicating with vendors, investors, governmental and regulatory authorities, and
others, as appropriate.

41.    The Receiver shall take all necessary steps to enable the Receivership
Funds to obtain and maintain the status of a taxable "Settlement Fund," within the
meaning of Section 468B of the Internal Revenue Code and of the regulations, when
applicable, whether proposed, temporary or final, or pronouncements thereunder,
including the filing of the elections and statements contemplated by those provisions.
The Receiver shall be designated the administrator of the Settlement Fund, pursuant to
Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements
imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer
identification number, (b) timely filing applicable federal, state, and local tax returns and
paying taxes reported thereon, and (c) satisfying any information, reporting or
withholding requirements imposed on distributions from the Settlement Fund.  The
Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with
treatment of the Settlement Fund as a "Qualified Settlement Fund."  The Receivership

15

Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2].

## X. Investigate and Prosecute Claims

42.      Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

43.      Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the Commission before commencing investigations and/or actions.

44.      The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

16

45.     The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII.  Bankruptcy Filing

46.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants.  If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.  Pursuant to Paragraph 4 above, the Receiver is vested with management authority for all entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.

47.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XII.  Liability of Receiver

48.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any

17

order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties].

50.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

51.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

### XIII. Recommendations and Reports

52.     The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

53.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

54.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the

18

period covered by the report) the existence, value, and location of all Receivership

Property, and of the extent of liabilities, both those claimed to exist by others and those

the Receiver believes to be legal obligations of the Receivership Estates.

55.   The Quarterly Status Report shall contain the following:

A.   A summary of the operations of the Receiver.

B.   The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.   A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.   A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.   A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.   A list of all known creditors with their addresses and the amounts of their claims;

G.   The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.   The Receiver's recommendation for a continuation or discontinuation of the receivership and the reasons for the recommendations.

56.   On the request of the Commission, the Receiver shall provide the

Commission with any documentation that the Commission deems necessary to meet its

reporting requirements, that is mandated by statute or Congress, or that is otherwise

19

necessary to further the Commission's mission.

## XIV. Fees, Expenses and Accountings

57.     Subject to Paragraphs 58 – 64 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

58.     Subject to Paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

59.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

60.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff. The Receiver may file an interim Application prior to the end of the first quarter following the Receiver's appointment. The Receiver also may file

20

an interim Application prior to the end of any subsequent quarter upon a showing that the interim Application is reasonably necessary.

61. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

62. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

63. Each Quarterly Fee Application shall:

    A.    Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

    B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

64.  At the close of the Receivership, the Receiver shall submit a Final

Accounting, in a format to be provided by Commission staff, as well as the Receiver's

final application for compensation and expense reimbursement.

IT IS SO ORDERED, this 13th day of October, 2009, at Chicago, IL.

**United States District Judge**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



U. S. SECURITIES AND EXCHANGE )
COMMISSION, )
 )
 )                    Plaintiff, )
 )
 v. )
 )
WILLIAM A. HUBER and )
HUBADEX, INC., )
 )
                    Defendants, )
 )
and )
 )
THE QUARTER FUNDS, L.P., )
THE SYMMETRY FUND, L.P., )
THE TRIMESTER FUND, AND )
RUTHANN HUBER, )
 )
                    Relief Defendants. )
 )

OCT 21 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
            DEPUTY CLERK

Civil Action No.

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission"),

alleges as follows:

### SUMMARY OF THE ACTION

1.    The Commission brings this emergency law enforcement action to shut down an

ongoing fraud by Defendant William A. Huber ("Huber"), an investment adviser, and his

company, Defendant Hubadex, Inc. ("Hubadex"). Since at least January 2006, Huber and

Hubadex have defrauded investors in the three private funds that they control: The Quarter

Funds, L.P. ("Quarter Funds"), The Symmetry Fund, L.P. ("Symmetry Fund") and The

Trimester Fund ("Trimester Fund") (collectively, the "Funds"). Among other things, Huber and

Hubadex have told investors that the Funds were making money, when in reality, the Funds earned negative investment returns. Huber and Hubadex also grossly misrepresented the total assets held by each Fund and the individual investors' current account balances and gains and losses on their investments. As of August 31, 2009, Huber and Hubadex claimed that they managed over $40.27 million in investor funds when, in reality, they only managed approximately $3 million. Instead, since at least 2006, Huber and Hubadex have paid themselves excessive fees based on the inflated gains they reported in the Funds. They also have diverted investor funds to Huber's wife, Ruthann Huber, and made Ponzi-like payments to investors using funds that belonged to other investors.

2.   As a result of their actions, Defendants Huber and Hubadex have violated, and unless enjoined, will continue to violate the antifraud provisions of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act") and the Investment Advisers Act of 1940 ("Advisers Act").

3.   In the interest of protecting the public from further fraudulent activity, the Commission brings this action to: (a) hold Defendants Huber and Hubadex accountable for their repeated violations of the federal securities laws; (b) require Defendants Huber and Hubadex and Relief Defendants Quarter Funds, Symmetry Funds, Trimester Fund and Ruthann Huber to disgorge their ill-gotten gains, plus prejudgment interest; (c) impose appropriate civil penalties against Defendants Huber and Hubadex; (d) appoint a Receiver to marshal and preserve investor assets, including liquidating securities, real estate or other property purchased with investor funds, and to distribute funds to injured investors; and (e) obtain such other relief as the Court deems appropriate.

4.     Due to the continuing risk of serious harm to current and prospective investors, the Commission also is seeking immediate, emergency relief including the entry of a temporary restraining order, the imposition of an asset freeze and other ancillary relief.

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v], Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa] and Section 209 and 214 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14]. Huber and Hubadex have, directly or indirectly, made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices and courses of business alleged in this Complaint.

6.     Venue is proper in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. §77v], Section 27 of the Exchange Act [15 U.S.C. §78aa] and Section 214 of the Advisers Act [15 U.S.C. §80b-14] because acts, transactions and courses of business constituting the violations alleged in this Complaint occurred within the jurisdiction of the United States District Court for the Northern District of Illinois and elsewhere.

## DEFENDANTS

7.     **William A. Huber** is 60 years old and has residences in Naples, Florida and La Jolla, California, both of which he purchased and held in Hubadex's name. Huber is the sole Director, President, Secretary and Treasurer of Hubadex, an Illinois corporation that he founded in 1996.

8.     **Hubadex, Inc.** is an Illinois corporation with its principal office in Forsyth, Illinois. Huber founded Hubadex in December 1996 and currently owns Hubadex with his wife, son and daughter. Huber's wife, Ruthann Huber, and his son and daughter are passive

3

shareholders in Hubadex. Hubadex serves as the general partner for two Illinois limited partnerships – The Quarter Funds, L.P. and The Symmetry Fund, L.P. Hubadex also serves as the general partner for the Trimester Fund, purportedly an investment club which Hubadex manages. In February 2005, Hubadex consented to the entry of an order by the Illinois Secretary of State Securities Department [In the Matter of Hubadex, Inc., its Officers, Directors, Employees, Agents, Affiliates, Successors, and Assigns, (File No. 0100836)] finding that Hubadex violated the registration provisions of the Illinois securities laws and ordering Hubadex to pay a $50,000 fine and make an offer of rescission to certain investors in the Quarter Funds, the Symmetry Fund and the Trimester Fund.

## RELIEF DEFENDANTS

9.  **The Quarter Funds, L.P.** is an Illinois limited partnership for which Hubadex is the General Partner. According to Hubadex's website, the Quarter Funds is a pooled investment fund formed in March 1997 and engages in speculative trading of options on the S&P 100 Index. From approximately March 1997 through the present, Hubadex has offered and sold limited partnership interests in the Quarter Funds to investors. Huber and Hubadex control the Quarter Funds' bank and brokerage accounts.

10.  **The Symmetry Fund, L.P.** is an Illinois limited partnership for which Hubadex is the General Partner. According to Hubadex's website, the Symmetry Fund is a pooled investment fund formed in January 1999 and is a multi-manager, multi-strategy, well diversified investment fund, commonly known as a fund of funds. From approximately January 1999 through the present, Hubadex has offered and sold limited partnership interests in the Symmetry Fund to investors. Huber and Hubadex control the Symmetry Funds' bank and brokerage accounts.

4

11. **The Trimester Fund** purports to be an investment club for which Hubadex is the General Partner, fund manager, record keeper and custodian. According to Hubadex's website, the Trimester Fund was formed in September 1998 and engages in speculative trading of options on exchange-traded common stocks. Starting in approximately September 1998, Hubadex offered and sold participation agreements in the Trimester Fund to investors. Hubadex's website states that the Trimester Fund is currently closed to new investors. Huber and Hubadex control the Trimester Funds' bank and brokerage accounts.

12. **Ruthann Huber** is 59 years old and Huber's wife. She resides with Huber in Naples, Florida and La Jolla, California. She also is a shareholder in Hubadex. Since January 2006, Ruthann Huber personally has received at least $788,000 in investor funds.

## HUBER AND HUBADEX'S FRAUDULENT SCHEME

13. Starting in the late 1990's, Huber and Hubadex began offering and selling limited partnership interests in the Quarter Funds and the Symmetry Fund and participation agreements in the Trimester Fund to investors.

14. Each of the Funds is a pooled investment vehicle that is privately organized, not widely available to the public and administered by Huber and Hubadex.

15. On behalf of Hubadex, Huber mainly has solicited friends and acquaintances to invest in the Funds and has obtained new investors largely through referrals from existing investors.

16. The Quarter Funds and the Symmetry Funds require minimum investments of $25,000 and $50,000 respectively. Each of the Funds allows investors to make new investments on the first day of each quarter and withdraw funds (with prior notice) on the last day of each quarter.

5

17.     According to a password-protected section of Hubadex's website
(www.hubadex.com) and the Quarter Funds' private placement memorandum, the Quarter
Funds' investment philosophy is to speculatively day trade options, primarily on the S&P 100
and 500 indices, using Hubadex's "powerful, proprietary PATHWAY trading model" which
Huber developed to identify profitable entry and exit points for purchasing stock options. The
private placement memorandum specifically provides that the Fund will use investor funds to
buy and sell exchange-traded options contracts and will primarily engage only in day trades.

18.     The password-protected section of Hubadex's website similarly discloses that the
Trimester Fund's investment philosophy is to speculatively trade options using PATHWAY.

19.     In contrast, the password-protected section of Hubadex's website and the
Symmetry Fund's private placement memorandum state that the Symmetry Fund will implement
a "fund of funds" investment strategy and primarily invest in a limited number of hedge funds
chosen by Huber and Hubadex.

20.     Hubadex acts as the General Partner for the Quarter Funds, the Symmetry Fund
and the Trimester Fund and manages all aspects of the Funds' business, including directing all
trading on behalf of the Funds.

21.     Hubadex does not receive management fees for directing trades on behalf of the
Quarter Funds and the Trimester Fund, but instead receives a quarterly "incentive fee" ranging
from 10% to 20% of the gains achieved in each Fund.

22.     Hubadex receives both a monthly cash fee based on the net assets of the
Symmetry Fund (in the amount of 2% annually) and a quarterly incentive fee of approximately
20% of the gains achieved by the Symmetry Fund.

23. When an investor decides to invest, they send Hubadex a check, cashier's check or wire transfer and signed copies of subscription agreements and purchaser questionnaires for investments in the Quarter Funds and the Symmetry Fund and participation agreements for investments in the Trimester Fund.

24. Each month, Huber and Hubadex send a "Performance Update & Commentary" and a detailed monthly account statement to each investor in any of the three Funds. The Performance Update & Commentary sets out the performance data for all of the Funds on a monthly, year-to-date, 12-month, 3-year and 5-year basis as compared to the S&P 500 Index, the Dow Jones Industrial Average and the NASDAQ Composite for the same time periods. The detailed monthly account statements set out the total amount of money held in the particular Fund, the net trading profits for the month, the accrued Fund management fees and the gross and net returns on investment as well as the individual investor's current account balance and current gain or loss.

### HUBER AND HUBADEX'S FALSE AND MISLEADING STATEMENTS

25. In the private placement memoranda for the Quarter Funds and the Symmetry Fund, the password-protected section of Hubadex's website, the monthly Performance Update & Commentary and the detailed monthly account statements, Huber and Hubadex have made a number of false and misleading statements to investors and prospective investors.

26. The bank and brokerage records obtained by the Commission show that Huber and Hubadex have substantially misrepresented the current assets under management in each of the Funds in the detailed monthly account statements sent to investors. For example:

| DATE | FUND NAME | CLAIMED ASSETS | ACTUAL ASSETS | DIFFERENCE |
|------|-----------|----------------|---------------|------------|
| 8/31/2009 | Quarter Funds | $33,317,812 | $672,842 | - $32,644,970 |
| 8/31/2009 | Symmetry Fund | $4,479,266 | $2,246,894 | - $2,232,372 |
| 8/31/2009 | Trimester Fund | $2,514,380 | $102,984 | - $2,411,396 |

7

27.     The bank and brokerage records also show that since at least January 2009, Huber
and Hubadex have substantially misrepresented the returns for the Funds in the monthly
Performance Update & Commentary and in the password-protected section of Hubadex's
website. For example:

| DATE | FUND NAME | CLAIMED RETURN | ACTUAL RETURN | DIFFERENCE |
|------|-----------|----------------|---------------|------------|
| 3/31/2009 | Quarter Funds | +2.0% | -6.7% | -8.7% |
| 3/31/2009 | Trimester Fund | 1.9% | 0% | -1.9% |

28.     In misrepresenting the current assets and returns for the Funds, Huber and
Hubadex also have overstated the individual investors' current account balances and current
gains in the detailed monthly account statements they sent to the investors.

29.     Since at least 2006, Huber and Hubadex have significantly inflated the monthly
cash fees that Hubadex was entitled to receive from the Symmetry Fund and the incentive fees
Hubadex was entitled to receive from all three Funds. For example, even though all three Funds
have sustained losses during 2009, Hubadex has transferred at least $657,638 in purported
management fees to itself from the Funds since January 1, 2009.

30.     Huber and Hubadex have not invested the Funds as claimed in the private
placement memoranda for the Quarter Funds and the Symmetry Fund and in the password-
protected section of Hubadex's website. For example:

        a.      Over the last three months, the only trading in the Quarter Funds' account
        was the purchase and sale of one option.

        b.      During the last five years, the only hedge fund investments in the
        Symmetry Fund's account were two $100,000 investments made in 2004 and
        2005 with the same hedge fund. Both of these investments were sold in 2008 and

8

only the $57,000 gain from the investments currently remains invested with the
hedge fund.

c. From August 2007 to the present, the Trimester Fund has not purchased or
sold any securities.

31. On December 17, 2008, one week after Bernard Madoff was arrested for
perpetrating a massive Ponzi scheme, Huber sent an e-mail message to investors reassuring them
that the Funds had nothing in common with Madoff's scheme. In the message, Huber misled
investors about the Symmetry Fund's non-existent hedge fund investments, claiming "[w]e just
received the last of the assurances from Symmetry's sub-funds which confirms the Symmetry
Fund, L.P. has no exposure whatsoever to Bernard Madoff's firm or investment funds." Huber
also lied to investors about the amounts of liquid assets in the Quarter Funds and Trimester Fund,
telling them that the total assets in each Fund were "equal to the value of the Funds' limited
partnership interests less any incentive management fee," when in reality the Funds held far less
money than Huber and Hubadex claimed. Huber further lied about the success of the Funds and
his own honesty, claiming that the enormity of Madoff's crime also damages the credibility of
"honest operators of successful alternative investment funds, such as ours, in the process and
without foundation ... We wonder if our funds were down 30 to 50% this year, would we be
subject to the same Madoff cloud of misgiving?"

32. Just days after the Commission's staff opened an investigation into Hubadex,
Huber and Hubadex also lied to the Commission about the current amounts of assets under
management in each of the Funds and the locations of certain of those assets. In letters dated
September 11 and September 18, 2009, Huber and Hubadex misrepresented the total assets under
management in the three Funds as over $40 million, when in reality the current assets total

9

approximately $3 million. Huber and Hubadex also misrepresented the current whereabouts of the Symmetry Fund's assets by claiming that they were held by six different hedge funds, when in reality the Symmetry Fund had never invested with five of those hedge funds and the sixth hedge fund only held a $57,000 gain from a prior investment.

## USES OF INVESTOR PROCEEDS

33. Between January 2006 and the present, Huber and Hubadex have raised at least $16.9 million from investors in the three Funds.

34. Huber and Hubadex have commingled investor funds in the bank and brokerage accounts for all three Funds.

35. Huber and Hubadex also have moved monies intended for investments in a particular Fund into the bank and brokerage accounts for the other Funds.

36. Huber and Hubadex have made Ponzi-like payments to investors who have requested redemptions based on the inflated amounts reflected in the monthly account statements instead of in amounts that reflected the true size and performance of the Funds. In order to meet these redemption requests, Huber and Hubadex have used funds that belong to other investors to pay previous investors with inflated returns.

37. Between January 2006 and the present, Huber and Hubadex have diverted at least $1.2 million in investor funds to Huber and Ruthann Huber's joint bank account and $788,000 in investor funds to Ruthann Huber's bank account.

38. Between January 2006 and the present, Huber and Hubadex also have paid at least $1.7 million in Huber's personal expenses using investor funds, including paying over $800,000 to purchase and fund mortgage payments and remodeling expenses for the residence in La Jolla, California, paying over $99,000 in property taxes, renovation expenses and condominium fees

10

for the residence in Naples, Florida and paying over $331,000 in premiums for life insurance policies.

39.     Huber recently sent letters and e-mail messages to certain investors telling them that they cannot add or withdraw funds from their accounts (even though the private placement memoranda allow them to do so at the end of each quarter), because Hubadex is undergoing an "audit and review by the SEC." In reality, Huber and Hubadex cannot meet all of the possible redemption requests from investors because the actual Fund balances are less than 10% of what Huber and Hubadex have represented to investors in their detailed monthly account statements.

40.     Huber also recently stopped responding to telephone calls from investors.

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act [15 U.S.C. §77q(a)(1)]

41.     Paragraphs 1 through 40 are realleged and incorporated by reference.

42.     Huber and Hubadex, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly employed devices, schemes or artifices to defraud.

43.     Huber and Hubadex knowingly or recklessly engaged in the fraudulent conduct described above.

44.     By engaging in the conduct described above, Huber and Hubadex have violated, and unless restrained and enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

45.     Paragraphs 1 through 40 are realleged and incorporated by reference.

46.     Huber and Hubadex, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

47.     By engaging in the conduct described above, Huber and Hubadex have violated, and unless restrained and enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III

### *Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] And Rule 10b-5 Thereunder [17 C.F.R. §240.10b-5]*

48.     Paragraphs 1 through 40 are realleged and incorporated by reference.

49.     Huber and Hubadex, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly: (a) used or employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon other persons, including current and prospective investors.

50.     Huber and Hubadex knowingly or recklessly engaged in the fraudulent conduct described above.

51. By engaging in the conduct described above, Huber and Hubadex violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT IV

### *Violations of Section 206(1) of the Advisers Act [15 U.S.C. §80b-6(1)]*

52. Paragraphs 1 through 40 are realleged and incorporated by reference.

53. At all relevant times, Huber and Hubadex acted as investment advisers to the Funds.

54. As more fully described above, Huber and Hubadex, while acting as investment advisers, by use of the mails or the means and instrumentalities of interstate commerce, directly or indirectly employed devices, schemes or artifices to defraud their clients or prospective clients.

55. Huber and Hubadex knowingly or recklessly engaged in the fraudulent conduct described above.

56. By engaging in the conduct described above, Huber and Hubadex violated Section 206(1) of the Advisers Act [15 U.S.C. §80b-6(1)].

## COUNT V

### *Violations of Section 206(2) of the Advisers Act [15 U.S.C. §80b-6(2)]*

57. Paragraphs 1 through 40 are realleged and incorporated by reference.

58. At all relevant times, Huber and Hubadex acted as investment advisers to the Funds.

59. As more fully described above, Huber and Hubadex, while acting as investment advisers, by use of the mails or the means and instrumentalities of interstate commerce, directly

13

or indirectly engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

60. By engaging in the conduct described above, Huber and Hubadex violated Section 206(2) of the Advisers Act [15 U.S.C. §80b-6(2)].

## COUNT VI

### *Violations of Section 206(4) of the Advisers Act [15 U.S.C. §80b-6(4)] and Rule 206(4)-8 Thereunder [17 C.F.R. §275.206(4)-8]*

61. Paragraphs 1 through 40 are realleged and incorporated by reference.

62. At all relevant times, Huber and Hubadex acted as investment advisers as defined under the Advisers Act. Huber and Hubadex managed the investments of the Funds in exchange for compensation in the form of incentive and monthly cash management fees.

63. As more fully described above, Huber and Hubadex, while acting as investment advisers, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts, practices or courses of business which were fraudulent, deceptive, or manipulative. Huber and Hubadex made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading , to investors or prospective investors in pooled investment vehicles, and otherwise engaged in acts, practices or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in pooled investment vehicles.

64. By engaging in the conduct described above, Huber and Hubadex violated Section 206(4) of the Advisers Act [15 U.S.C. §80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. §275.206(4)-8].

## COUNT VII

### *Equitable Claims against the Relief Defendants for Disgorgement*

65. Paragraphs 1 through 40 are incorporated herein by reference.

66. Quarter Funds, Symmetry Fund, Trimester Fund and Ruthann Huber, directly or indirectly, received funds or benefited from the use of such funds, which are the proceeds, or are traceable to the proceeds, of the unlawful activity alleged above.

67. The monies that Quarter Funds, Symmetry Fund, Trimester Fund and Ruthann Huber received from Hubadex and Huber constitute ill-gotten gains from Huber and Hubadex's fraudulent conduct.

68. Quarter Funds, Symmetry Fund, Trimester Fund and Ruthann Huber do not have legitimate claims to the ill-gotten funds they received from Huber and Hubadex or to any assets that they acquired with those ill-gotten funds.

69. The Commission is entitled to an order, pursuant to common law equitable principles and Section 21(d)(5) of the Exchange Act [15 U.S.C. §78u(d)(5)], requiring Quarter Funds, Symmetry Fund, Trimester Fund and Ruthann Huber to disgorge all of the proceeds of investor funds that they received or from which they benefited, either directly or indirectly.

### RELIEF REQUESTED

**WHEREFORE,** the Commission requests that this Court:

#### I.

Find that Defendants Huber and Hubadex committed the violations alleged against them.

#### II.

Grant Temporary Restraining Orders and Orders of Preliminary and Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure,

15

restraining and enjoining Defendants Huber and Hubadex, their agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the Order by personal service or otherwise, from directly or indirectly engaging in transactions, acts, practices or courses of business which violate Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], Rule 10b-5 thereunder [17 C.F.R. §240.10b-5], Sections 206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. §275.206(4)-8].

## III.

Order Defendants Huber and Hubadex to disgorge the ill-gotten gains they received as a result of the violations alleged in this Complaint, plus prejudgment interest.

## IV.

Order Relief Defendants Quarter Funds, Symmetry Fund, Trimester Fund and Ruthann Huber to disgorge the ill-gotten gains they received as a result of the violations alleged in this Complaint, including without limitation all investor funds transferred to them or used, directly or indirectly, for their benefit, plus prejudgment interest.

## V.

Order Defendants Huber and Hubadex to pay appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)].

## VI.

Appoint a Receiver over Defendants Huber and Hubadex and Relief Defendants Quarter Funds, Symmetry Fund and Trimester Fund, and any other entities they own or control, and over

16

any assets of Relief Defendant Ruthann Huber that are attributable to funds derived from investors or clients of Defendants Huber and Hubadex, are held in constructive trust for Defendants Huber and Hubadex, were fraudulently transferred by Defendants Huber and Hubadex or may otherwise be includable as assets of the estates of Defendants Huber and Hubadex, for the purposes of marshaling and preserving investor assets, including liquidating securities, real estate and other property purchased with investor funds, and distributing funds to injured investors.

## VII.

Establish a Fair Fund pursuant to Section 308 of the Sarbanes-Oxley Act of 2002, into which all disgorgement, prejudgment and post judgment interest, and civil penalties obtained through this action will be deposited and then distributed to injured investors pursuant to a plan of distribution to be submitted by the Plaintiff or Receiver and approved by the Court.

## VIII.

Retain jurisdiction over this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable applications or motions for addition relief within the jurisdiction of this Court.

## IX.

Grant appropriate emergency relief to prevent further secretion or dissipation of investor assets.

17

**X.**

Grant such other and additional relief as this Court deems just and proper.

Respectfully Submitted,

John E. Birkenheier (Illinois Bar No. 6270993)
John J. Sikora, Jr. (Illinois Bar No. 6217330)
Anne C. McKinley, (Illinois Bar No. 6270252)
Richard G. Stoltz (Northern District of Illinois Bar No. 56398)
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-3381

Dated: September 29, 2009